# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| RAYMOND CANNON | * | CIVIL ACTION NO.  09-02164 |
| VERSUS | * | JUDGE DONALD E. WALTER |
| LEROY SMITH ET AL. | * | MAGISTRATE JUDGE<br>KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the district court, is a motion to dismiss filed by defendant Leroy Smith, Jr. ("Smith").  Doc. # 15.  For reasons stated below, it is recommended that the motion to dismiss be **GRANTED.**

## BACKGROUND

Both Smith and plaintiff Raymond Cannon ("Cannon") have served as veteran attorneys in the Sixth District Public Defender Office ("Public Defender Office").

In December 2007, Smith filed a petition for declaratory judgment in state court seeking a declaration that he was the Chief Indigent Defender and, by statute, the District Public Defender for the Sixth Judicial District.  *Smith v. Cannon*, 2 So. 3d 1227, 1228 (La. Ct. App. 2009).[1] Smith subsequently submitted a supplemental petition for a writ of *quo warranto* against Cannon.  *Id.*  Cannon responded by submitting a writ of *quo warranto* against Smith.  *Id.* Accordingly, the trial court directed both parties to show by what authority each claimed that he

---

[1] The relevant statute, LA. REV. STAT. ANN. art. 15:161 H.(1), provides: "In an effort to maintain continuity of indigent defender services in each judicial district, any person employed as the chief indigent defender of a judicial district as of January 1, 2007, pursuant to the provisions of R.S. 15:145(B)(2)(a), shall continue to be employed by, or enter into a contract with, the board and serve as the district public defender of that district."

was the District Public Defender for the Sixth Judicial District.  *Id.*  The trial court determined

that Smith held the office in question.  *Id.*  The Louisiana Second Circuit affirmed.

On December 22, 2009, Cannon filed the instant suit against Smith, individually and in

his official capacity as the Chief Public Defender for the Sixth Judicial District, the Sixth District

Public Defender Office, and the Louisiana Public Defender Board.  Doc. # 1.  Cannon essentially

asserted numerous claims against the defendants arising out of the termination of his employment

with the Public Defender Office on November 25, 2009.

In his complaint, Cannon alleged that the Sixth Judicial District Board (the "Board") was

comprised of three members - two white members and one black member - in November 2006.

*Id.* at 8.  The Board was "empowered to make personnel decisions, including hiring and firing"

decisions.  *Id.*  In addition, the Board would regularly ask the employees of the Public Defender

Office to attend its meetings when those meetings pertained to the affairs of the Public Defender

Office.  *Id.*

The Board held a meeting on November 14, 2006.  *Id.*  One of the items on its agenda

was hiring Smith to serve as the Chief Indigent Defender.  *Id.*  Notably, Cannon alleged that the

Board did not invite the three black attorneys who worked in the Public Defender Office to this

particular meeting.  *Id.*

On July 24, 2007, the Board held another meeting.  Doc. # 24 at 7.  At this meeting and

subsequent Board meetings, Davis complained that the Board violated Louisiana's Open Meeting

Law by failing to invite the black attorneys who worked in the Public Defender Office to the

November 14, 2006 Board meeting.  *Id.*

On August 26, 2009, after the state courts had determined Smith to be the District Public

Defender, Smith submitted a letter to Cannon which required Cannon to make an employment decision which allegedly amounted to a "constructive termination." *Id.* at 9.  Nevertheless, Cannon apparently continued to work at the Public Defender Office.

On November 25, 2009, Smith submitted a letter to Cannon terminating his employment with the Public Defender Office. *Id.* at 10.

Cannon itemized numerous federal and state claims against Smith.  His federal claims included violations of his civil rights under 42 U.S.C. §§ 1981, 1982, and 1983, as well as his rights under Title VII of the Civil Rights Act of 1964, and the Age Discrimination in Employment Act ("ADEA").  *Id.* at 11-12.  Cannon's state claims against Smith included tortious interference with contract, infringement of Cannon's right to complain of unlawful employment practices, and interference with Cannon's right to practice law on behalf of indigent clients.  *Id.* at 12.

On February 20, 2010, Smith filed the instant motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Doc. # 15.  Smith seeks to dismiss Cannon's claims on several grounds.  First, Smith contends that this court does not have subject matter jurisdiction over Cannon's Title VII and ADEA claims because Smith has not exhausted his administrative remedies for these claims.  Second, Smith claims that Cannon cannot maintain an action against him in his individual capacity under Title VII, the ADEA, or the Louisiana anti-discrimination statutes because those statutes authorize plaintiffs only to sue "employers," and not individuals. Third, Smith argues that Cannon has not stated claims upon which relief can be granted under 42 U.S.C. §§ 1981 and 1983.  Fourth, Cannon contends that he has qualified immunity against Smith's civil rights claims.  Fifth, Smith contends that Cannon's claims have already been

litigated in the *quo warranto* proceedings in the state courts, and thus are barred by the doctrine of *res judicata*. Finally, Smith urges this court to decline to exercise supplemental jurisdiction over any of Smith's remaining state law claims, and in the alternative, to dismiss these claims under Rule 12(b)(6).

In response to the motion to dismiss, Cannon agreed to withdraw his Title VII and ADEA claims for failing to exhaust his administrative remedies with respect to both claims. Doc. # 24 at 1. However, on July 27, 2010, Cannon filed a motion for leave to amend his complaint after receiving a right to sue notice from the Equal Employment Opportunity Commission for his Title VII and ADEA claims. Doc. # 33, Ex. 3. The court granted that motion. Doc. # 34. Accordingly, this court will consider the instant motion to be moot insofar as it seeks dismissal of Smith's Title VII and ADEA claims for failure to exhaust administrative remedies under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

After several delays, the matter is now ripe. The court will consider the remaining bases of Smith's motion to dismiss in turn.

## LAW AND ANALYSIS

### I. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal where the claimant fails "to state a claim upon which relief can be granted." Fᴇᴅ. R. Cɪᴠ. P. 12(b)(6). In the context of employment discrimination claims, "the ordinary rules for assessing the sufficiency of a complaint apply," and a plaintiff need not establish a prima facie case of employment discrimination in her complaint. *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002). To survive a motion to dismiss, a complaint "must simply give the defendant fair notice of what the

plaintiff's claim is and the grounds upon which it rests." *Id.* at 512.  However, "while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Indeed, "while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  Finally, when a plaintiff pleads factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.*

## II. Individual Liability under Title VII and ADEA

Smith contends that Cannon's claims under Title VII, the ADEA, and Louisiana's anti-discrimination statutes against him in his individual and official capacities must be dismissed because none of these statutes authorize an action against an individual.

Smith's contention has merit.  Title VII authorizes actions against "employers," but not against supervisory employees of the employer in their individual capacities.  *Baldwin v. Layton*, 300 Fed. Appx. 321, 323 (5th Cir. 2008).  The same holds true for the ADEA.  *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996) ("[T]he ADEA provides no basis for individual liability for supervisory employees.").  Likewise, a plaintiff may not hold his supervisor individually liable under Louisiana's anti-discrimination statutes.  *Hornsby v. Enter. Transp. Co.*, 987 F. Supp. 512, 515 (M.D. La. 1997).

Furthermore, to the extent that Cannon alleges official capacity claims against Smith under Title VII, the ADEA, and Louisiana's anti-discrimination statutes, the claims are

misplaced.  Official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*  Accordingly, Cannon's official capacity claims against Smith are more appropriately considered as claims against the Public Defender Office.

### III. 42 U.S.C. §§ 1981 and 1983

Section 1983 of Title 42 of the United States Code provides a remedy to a U.S. citizen who has been deprived of his constitutional rights by a government official.  42 U.S.C. § 1983.

Cannon's complaint is littered with vague assertions that Smith violated his constitutional rights.  However, mere conclusory assertions of constitutional violations do not survive a motion to dismiss under *Iqbal*, which specifically counsels that a plaintiff must plead factual allegations in order to state a viable claim.  *Iqbal*, 129 S. Ct. at 1950.

The two claims that Cannon's complaint most logically sets forth under § 1983 against Smith are a race-related retaliation claim and a procedural due process claim.[2]  The court will consider each of these claims in turn.

### A. Retaliation Claim

Cannon appears to allege that the Board's November 14, 2006 meeting was unlawful in that the Board did not invite the three black attorneys from the Public Defender Office to attend,

---

[2] Unlike Title VII and other anti-discrimination statutes, 42 U.S.C. § 1983 authorizes actions against a government official in his individual capacity.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  However, to the extent that Cannon's complaint attempts to set forth claims under §1983 against Smith in his official capacity, they are misplaced for reasons stated above in the court's discussion of individual liability under Title VII and the ADEA.

even though the Board regularly invited these attorneys to its meetings that pertained to the affairs of the Public Defender Office.  Doc. # 1 at 8.  Cannon "spoke out against" this allegedly unlawful meeting to Smith, and Smith subsequently terminated him.  *Id.* at 10.

Section 1981 of Title 42 of the United States Code provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981.  Accordingly, employment discrimination claims, such as retaliation claims, pertaining to the "making, performance, modification, and termination of contracts," 42 U.S.C. § 1981(b), are cognizable under 42 U.S.C. § 1981.  *Evans v. Houston*, 246 F.3d 344, 357 (5th Cir. 2001). However,  "[i]n order to remedy violations of §1981, a plaintiff must assert a cause of action under § 1983."  *Meyers v. La Porte Indep. Sch. Dist.*, 277 Fed. Appx. 333, 335 (5th Cir. 2007).

The prima facie case for a retaliation claim under both Title VII and 42 U.S.C. § 1981 is identical.  *McKinney v. Bolivar Med. Ctr.*, 341 Fed. Appx. 80, 82 (5th Cir. 2009).  A plaintiff must show: (1) he participated in an activity protected by Title VII; (2) his employer subjected him to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action.  *Id.*  "An employee has engaged in activity protected by Title VII if [he] has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII."  *Id.* (citing 42 U.S.C. § 2000e-3).

Cannon's retaliation claim must be dismissed first because he cannot demonstrate a causal connection between his allegedly protected activity and his termination.  According to his memorandum in opposition to Smith's motion to dismiss, Cannon first opposed the Board's

7

allegedly unlawful meeting on July 24, 2007.  Doc. # 24 at 7.  He was terminated on November 25, 2009.  Doc. # 1 at 10.  The roughly two and a half years that separate Cannon's first instance of allegedly protected activity and his termination is simply too attenuated to satisfy the causal connection requirement of retaliation claims under either Title VII or 42 U.S.C. § 1981.  *See Miller-Goodwin v. City of Panama City Beach*, No. 09-12598, 2010 U.S. App. LEXIS 14038, at *20 (11th Cir. July 8, 2010) (compiling cases which demonstrate that a gap of a few months between the protected activity and the adverse employment decision is sufficient to negate the causal connection requirement for retaliation claims).

Moreover, Cannon has not pled any factual allegations which would plausibly suggest that the Board's failure to invite any of the black attorneys from the Public Defender Office to its November 14, 2006 meeting - which he allegedly "spoke out against" - was an unlawful employment practice under Title VII.  Under 42 U.S.C. § 2000e-2(a)(2), "[i]t shall be an unlawful employment practice for an employer . . . to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race . . . ."  Absent from Cannon's complaint are any factual allegations which would indicate that the presence of these black attorneys at the November 14 meeting would have influenced in any way the race of the person that the Board appointed as the Chief Indigent Defender.  For example, Cannon has not alleged that the black attorneys were voting members of the Board or that the Board needed these attorneys' consent to appoint the Chief Indigent Defender.  Also absent from Cannon's complaint are any factual allegations which would indicate that the Board - one of whose three members was black - was motivated by racial considerations

8

in its decision to hire Smith and not to hire Cannon as the Chief Indigent Defender.  Accordingly, Cannon's complaint does not sufficiently allege that he opposed an employment practice that was indeed unlawful, and his retaliation claims therefore cannot survive Smith's motion to dismiss for this additional reason.

### B. Procedural Due Process Claim

The only other claim under §1983 that Cannon's complaint could logically support against Smith is that Smith violated Cannon's procedural due process rights by not providing him a pre-termination hearing.  Doc. # 1 at 10-11.  However, Cannon also fails to state a procedural due process claim against Smith for purposes of Rule 12(b)(6).

"A public employee who has a property interest in her job cannot be fired without due process of law."  *Wallace v. Shreve Mem. Library*, 97 F.3d 746, 748 (5th Cir. 1996).  Whether a public employee has a property interest in her job is determined by state law.  *Id.*  "The only public employees with protected property interests in their jobs under Louisiana law are those with contracts stating that they may be fired only for cause and those who are permanent classified employees under the State's civil service system."  *David v. Assumption Parish Police Jury*, No. 02-765, 2003 U.S. Dist. LEXIS 134, at *16 (E.D. La. Jan. 6, 2003) (citing *Wallace*, 97 F.3d at 748).

In his complaint, Cannon does not allege that he fits either of these categories. Accordingly, Cannon's complaint does not state a procedural due process claim.

## IV. Qualified Immunity

In the motion to dismiss, Smith argues that he is entitled to qualified immunity from Cannon's § 1983 claims.  Doc. # 15 at 15.

"Qualified immunity operates to shield government officials performing discretionary functions 'from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Enlow v. Tishomingo County*, 962 F.2d 501, 508 (5th Cir. 1992) (citation omitted).  "Once the defense of qualified immunity is raised, the plaintiff has the burden to establish facts that overcome the defense." *Deleon v. City of Dallas*, 345 Fed. Appx. 21, 22 (5th Cir. 2009).  To discharge this burden upon a motion to dismiss, a plaintiff must satisfy a two-prong test. *Atteberry v. Nocona Gen'l Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).  "First, he must claim that the defendants committed a constitutional violation under current law." *Id.*  "Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.*

In his memorandum in opposition to Smith's motion to dismiss, Cannon specifically responded to Smith's claim of qualified immunity.  Doc. # 24 at 12-14.  However, Cannon has failed to meet his burden on either prong of the qualified immunity inquiry.

Regarding the first prong, Cannon has not sufficiently claimed that Smith violated his constitutional rights.  As the foregoing discussion of Cannon's § 1983 claims indicates, Cannon's complaint does not state a claim upon which relief can be granted with respect to his race-related retaliation claim under § 1983 or his procedural due process claim, the two constitutional claims that Cannon's complaint most logically appears to seek to bring.  Furthermore, despite Cannon's arguments to the contrary, his complaint does not state a First Amendment claim against Smith because he has simply pled no factual allegations which would support a First Amendment claim.

Cannon has also not claimed that Smith acted unreasonably in terminating him, as required

10

by the second prong of the qualified immunity inquiry.  Indeed, Cannon cannot set forth such a

claim, because, as the preceding discussion indicates, he has not properly alleged that Smith

violated his constitutional rights in the first place.

## V. Res Judicata

     Smith contends that the *quo warranto* proceedings that the Louisiana state courts

adjudicated between himself and Cannon bar Cannon's discrimination claims on the basis of *res

judicata*.  On this issue, Smith is incorrect.

     "A federal court, asked to give res judicata effect to a state court judgment, must apply the

res judicata principles of the law of the state whose decision is set up as a bar to further litigation."

*Hernandez v. City of Lafayette*, 699 F.2d 734, 736 (5th Cir. 1983).  Louisiana's doctrine of res

judicata is set forth in LA. REV. STAT. ANN. § 13:4231.[3]  The Supreme Court of Louisiana

discussed this statute at length in *Chevron U.S.A., Inc. v. State of Louisiana*, 993 So. 2d 187 (La.

2008).  The court stated that five elements must be met for a court to find that a second action is

---

     [3] This statute provides:

Except as otherwise provided by law, a valid and final judgment is conclusive between the same
parties, except on appeal or other direct review, to the following extent:

  (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final
judgment arising out of the transaction or occurrence that is the subject matter of the litigation
are extinguished and merged in the judgment.

  (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final
judgment arising out of the transaction or occurrence that is the subject matter of the litigation
are extinguished and the judgment bars a subsequent action on those causes of action.

  (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent
action between them, with respect to any issue actually litigated and determined if its
determination was essential to that judgment.  LA. REV. STAT. ANN. § 13:4231.

precluded by res judicata under Louisiana law: "(1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the causes or cause of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation." *Id.* at 194.

Smith cannot meet the fourth or fifth elements of Louisiana's res judicata doctrine with respect to the discrimination claims that Cannon alleges in the instant matter.  Cannon's discrimination claims did not exist at the time of the *quo warranto* proceeding because his discrimination claim against Smith, as previously noted, is a retaliation claim that arises out of his termination, which occurred after the *quo warranto* proceeding.  Furthermore, the subject matter of the *quo warranto* proceeding was exclusively a determination of whether Cannon or Smith was the District Public Defender, whereas the subject matter of the instant suit is much broader.  Of course, the state law proceedings may implicate the doctrine of issue preclusion as to some of the elements in any remaining claims, but this court need not consider same at this juncture.

## VI. Plaintiff's State Law Claims

As previously noted, Cannon itemized three state law claims against Smith - tortious interference with contract, infringement of Cannon's right to complain of unlawful employment practices, and interference with Cannon's right to practice law on behalf of indigent clients.  Doc. # 1 at 12.  Smith urges this court to decline to exercise supplemental jurisdiction over these claims, and in the alternative, to dismiss them for failure to state a claim upon which relief can be granted.

A district court may decline to exercise supplemental jurisdiction over state claims when,

*inter alia*, "the district court has dismissed all claims over which it has original jurisdiction."  28

U.S.C. § 1367(c)(3).   If Smith were the only defendant in this case, the undersigned would

recommend that this court decline to exercise supplemental jurisdiction over Cannon's state law

claims under 28 U.S.C. § 1367(c)(3), given the recommendations regarding Cannon's federal

claims against Smith.   However, Cannon's complaint also alleges federal claims against the

Louisiana Public Defender Board and the Sixth District Public Defender Office, and those claims

are not at issue in the present motion.  Doc. # 1 at 3.   Accordingly, this court still has original

jurisdiction over the instant matter, and there is no basis to decline supplemental jurisdiction over

Cannon's state law claims against Smith, which are clearly "related to" Cannon's federal claims

against Smith's co-defendants for purposes of  28 U.S.C. § 1367(a).   Therefore, the undersigned

has analyzed Smith's motion to dismiss the state law claims against him on 12 (b)(6) grounds, and

for reasons stated below, recommends dismissal on those grounds.

      Cannon's tortious interference with contract claim cannot survive Smith's motion to

dismiss.  A valid tortious interference with contract claim requires the plaintiff to have a contract

with a third party.  *Polar Bear Ice Co. v. Williamson*, 883 So. 2d 1134, 1137 (La. Ct. App. 2004).

Cannon has failed to demonstrate that he had a contract with the Public Defender Office.  While

Cannon has alleged that he had a contract with the Public Defender Office in his complaint, he has

attached to his pleadings, as proof of this contract, a document from 1994 purporting to be a

renewable contract.  However, a review of the alleged contract shows that only he signed it.  Doc.

# 24, Ex. 3.

      Cannon's second state law claim, as his memorandum in opposition to Smith's motion to

dismiss indicates, can appropriately be considered as a whistleblower claim under LA. REV. STAT.

ANN. § 23:967.  *See* doc. # 24 at 7.  In his memorandum, Cannon argues that he was terminated for complaining of the Board's violations of Louisiana's Open Meetings Law, LA. REV. STAT. ANN. § 42:4.1, at the Board's meeting on July 24, 2007, and at subsequent meetings of the Board. Cannon's whistleblower claim is thus comparable to his federal retaliation claims.  Accordingly, Cannon's whistleblower claim does not state a claim upon which relief can be granted for the same reason his federal retaliation claims did not - because the roughly two and a half years that separate the July 24, 2007, meeting from Cannon's termination on November 25, 2009, demonstrates the absence of a causal link between his allegedly protected activity and his termination, and because he has failed to allege any unlawful employment practice under Title VII.

Finally, Cannon's third and final state law claim would appear to allege that Smith did not have the authority to terminate him and thus interfere with his law practice.  As to this claim, the state court determination that Smith was the District Public Defender would appear to be determinative of this assertion.  In addition, as previously noted, Cannon's own complaint, and the attachments thereto, shows that he did not have a viable employment contract with the Public Defender Office.  He has thus failed to demonstrate that he was anything but an employee at will of the Public Defender Office.  *Quebedeaux v. Dow Chemical Co.*, 820 So. 2d 542, 545 (La. 2002) (employment at will is the default rule in Louisiana).  Thus, Cannon's claim that Smith - who had been adjudicated to be the District Public Defender of the Public Defender Office through the *quo warranto* proceeding - did not have the authority to terminate him must also be dismissed.

**CONCLUSION**

14

For the foregoing reasons,

**IT IS RECOMMENDED** that the motion to dismiss filed by defendant Leroy Smith (doc. # 15) be **GRANTED**, and that plaintiff's claims against him in both his individual and official capacities be dismissed with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 10th day of August, 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE